IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | **COMPLAINT** |
| : | |
| KENT STATE UNIVERSITY; KENT STATE : | |
| UNIVERSITY BOARD OF TRUSTEES; JILL : | |
| CHURCH; ELIZABETH JOSEPH; BRIAN : | |
| HELLWIG; AND AMY QUILLIN, : | |
| : | |
| Defendants. : | |

The United States of America alleges as follows:

## NATURE OF THE ACTION

1. This action is brought by the United States to enforce Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601–3619. This action is brought on behalf of Jacqueline Luke, Brandon Luke, and the Fair Housing Advocates Association, pursuant to 42 U.S.C. § 3612(o), and is also brought pursuant to 42 U.S.C. § 3614(a).

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action under 28 U.S.C. § 1345 and 42 U.S.C. §§ 3612(o) and 3614(a).

3. Venue is proper under 28 U.S.C. § 1391(b), because a substantial part of the events and omissions giving rise to the claims alleged herein occurred in the Northern District of Ohio and most of the Defendants reside in the Northern District of Ohio.

**DEFENDANTS**

4. Defendant Kent State University is a public university that includes a four-year college and graduate programs. The Kent Campus in Kent, Ohio has more than 27,500 undergraduate and graduate students enrolled from all 50 states and 100 countries. Kent State University offers more than 200 academic majors and minors.

5. Defendant Kent State University Board of Trustees is the governing body of Kent State University. By Ohio law, the Kent State University Board of Trustees is responsible for approving all university rules and regulations and for doing all things necessary for the proper maintenance and successful and continuous operation of Kent State University.

6. Defendant Jill Church is the Director of Kent State University's Department of Residence Services. At all times relevant to this complaint, Ms. Church was employed by the Department of Residence Services.

7. Defendant Elizabeth Joseph is the former Director of Kent State University's Department of Residence Services. Ms. Joseph served as the Director of the Department of Residence Services from 2004 to 2012.

8. Defendant Brian Hellwig is the Assistant Director of Residential Safety & Security for Kent State University's Department of Residence Services. At all times relevant to this complaint, Mr. Hellwig was employed by the Department of Residence Services.

9. Defendant Amy Quillin is the Director of the office of Student Accessibility Services at Kent State University. At all times relevant to this complaint, Ms. Quillin was employed by the office of Student Accessibility Services.

## SUBJECT PROPERTIES

10. Kent State University, through the Department of Residence Services, operates 25 residence halls and the Allerton Apartments on the Kent Campus. Approximately 6,200 students live in university housing on the Kent Campus.

11. Student housing on the Kent Campus includes dormitory rooms with shared bathrooms, double and triple rooms with private bathrooms, three and four person quads, suites, and apartments.

12. The Allerton Apartments is an apartment complex composed of several buildings on the Kent Campus. The Allerton complex consists of 162 two-bedroom and five one-bedroom garden-style apartments.

13. Kent State University rents the Allerton Apartments to single students with 60 or more credit hours, students who are 21 years of age or older, legally married couples in which one or more members of the couple is a student, and individual students who are parents with at least one dependent child.

14. Kent State University's standard contract for student housing is for the period of an academic year. Housing contracts for a calendar year and contracts that include break periods are also available in some residence halls and in the Allerton Apartments.

## FACTUAL ALLEGATIONS

**Kent State University's Policies**

15. Kent State University does not permit pets other than fish in university-owned student housing.

16. Kent State University's Department of Residence Services and Student Accessibiltiy Services office share authority to decide requests for reasonable accommodations in university-owned student housing.

17. Kent State University does not grant accommodation requests from students seeking to live with untrained assistance animals in university-owned student housing.  This prohibition covers therapy animals, support animals, and comfort animals.

18. Under appropriate circumstances, Kent State University will make an exception to its pets policy to permit a student with a disability to live with a "service animal" in university-owned student housing.

19. Kent State University's Student Accessibility Services Handbook states that, "*Service animal* means any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability.  Other species of animals, whether wild or domestic, trained or untrained, are not service animals for the purposes of this definition.  The work or tasks performed by a service animal must be directly related to the individual's disability."

20. Kent State University has permitted service dogs to live in its university-owned student housing, including in the residence halls and the Allerton Apartments.

21. Besides fish or an animal that meets the "service animal" definition above, there are no other exceptions to Kent State University's policy prohibiting animals in student housing.

**Denial of Jacqueline Luke's Reasonable Accommodation Request**

22. Jacqueline Luke is a person with a disability.[1] She has been diagnosed with anxiety and panic disorder.

23. Brandon Luke is married to Jacqueline Luke. The Lukes currently reside together and resided together at all times relevant to this complaint.

24. The Lukes moved into a two-bedroom apartment in the Allerton Apartments for the fall 2008 semester. The Lukes had the same class schedule during the fall 2008 semester.

25. Beginning in the spring 2009 semester, the Lukes had differences in their class schedules and Ms. Luke spent more time alone at the Allerton Apartment.

26. When alone, Ms. Luke experienced panic attacks that substantially impaired her ability to breathe, study, learn, and complete basic daily functions.

27. The anxiety and panic attacks became disabling to Ms. Luke on or before October 2009.

28. In October 2009, Ms. Luke began treatment for anxiety and panic attacks with psychologist Dr. Kirsten DeLambo, Ph.D, in Kent State University's University Health Services.

29. On October 27, 2009, Dr. DeLambo wrote a letter stating that Ms. Luke "is under my care for panic disorder and anxiety." Dr. DeLambo stated her recommendation that Ms. Luke be permitted "to have a dog in her apartment" because it was "the best tool for Ms. Luke at this time."

30. On or about December 14 and 15, 2009, Jacqueline Luke met with employees or agents in the Student Accessibiltiy Services office to discuss her interest in obtaining a dog to help with her disability.

---

[1] The term "disability" is synonymous with the term "handicap" as defined in 42 U.S.C. § 3602(h). The United States uses the term "disability."

31. The "Initial Contact Form" was completed by employees or agents in the Student Accessibility Services at or near the time of the meeting described in the preceding paragraph. This form indicates that Ms. Luke was seeking a "housing accommodation" for an "emotional service animal."

32. Since at least December 15, 2009, the Defendants have been aware of Ms. Luke's disability and her request to live with an assistance animal to ameliorate the effects of the disability.

33. Ms. Luke met with Defendant Quillin at Student Accessibility Services on or about December 15, 2009.

34. On or about December 15, 2009, Defendant Quillin prepared a summary of the meeting with Ms. Luke referenced in the preceding paragraph. The summary of the interview listed Ms. Luke's "disability" as "Psych – panic disorder/agoraphobia" and indicated that the disability documentation was "COMPLETE" for Ms. Luke to be considered a student with a disability. Defendant Quillin's summary of the interview indicates that Ms. Luke "is requesting to have her dog live at Allerton with her as a comfort/therapy animal." Defendant Quillin's notes further state that Ms. Luke reported "anxiety and panic attacks" and that, "[w]hen asked what services the dog performs," Ms. Luke stated that "he sits by her, 'knocks' her out of it [the attack]."

35. During the December 15, 2009, meeting, Ms. Luke provided Defendant Quillin with a copy of Dr. DeLambo's October 27, 2009, letter. Defendant Quillin asked whether the proposed dog had been trained.

36. During the December 15, 2009, meeting, Defendant Quillin provided Ms. Luke a "Disability Verification" form to be completed by Ms. Luke's "diagnosing/current psychiatrist,

6

psychologist or licensed counselor." On or about December 16, 2009, Dr. DeLambo completed the form and submitted it to Student Accessibility Services.

37. On or about December 16, 2009, Defendant Quillin contacted Dr. DeLambo to make inquiries about the recommendation that Ms. Luke be permitted to live with a dog. Defendant Quillin asked, inter alia, whether Dr. DeLambo had met the proposed dog and whether it had been trained.

38. Around the same time, Defendant Church spoke with her supervisor, Defendant Joseph, at the Department of Residence Services. Following this conversation, Defendant Church told Defendant Quillin that the Department of Residence Services had decided not to allow Ms. Luke to have a dog at the Allerton Apartments.

39. Defendant Quillin's notes from her conversation with Defendant Church state that the Department of Residence Services said "no to therapy dog, although they would consider a cat."

40. Defendants never told Ms. Luke they might consider a cat as a reasonable accommodation.

41. Sometime in December 2009, following Ms. Luke's meeting with Defendant Quillin, the Lukes acquired a medium-sized dog named Lenore.

42. Lenore significantly ameliorated the effects of Ms. Luke's disability. Dr. DeLambo documented approximately a 50% decrease in Ms. Luke's overall level of anxiety and the frequency of panic attacks also decreased substantially.

43. On or about February 3, 2010, Defendant Hellwig learned that the Lukes were keeping a dog in their unit. He emailed Mr. Luke and asked that the dog be removed from the Allerton Apartments within two days.

7

44. On or about February 4, 2010, Defendant Quillin emailed Ms. Luke and told her that her accommodation request was denied because "we are not able to provide [a therapy dog] as an accommodation." The denial email further stated, "Given various interpretations of the law and some newer amendments to the ADA, there has been some discussion about pet therapy dogs having equal status to service animals, e.g. 'guide dogs.' At this point, however, there has been no official consensus on these discussions and no rulings from the courts that would, at this time, provide for pet therapy animals as an accommodation."

45. No other reasons for the denial were provided in Defendant Quillin's February 4, 2010, email denying Ms. Luke's accommodation request.

46. Because of the denial of Ms. Luke's accommodation request, the Lukes moved out of the Allerton Apartments. In the Petition for Contract Release from the Allerton Apartments lease, Mr. Luke stated the reason as, "My wife needs her service animal, and so we would like the opportunity to move to a medically friendly apartment complex." The Lukes moved on or about February 12 through February 15, 2010.

47. The Fair Housing Advocates Association ("FHAA") is an Ohio nonprofit corporation with offices located in Akron, Ohio. FHAA's organizational purposes are to promote equal housing opportunities and eliminate illegal housing discrimination in the State of Ohio. In furtherance of its mission, FHAA provides fair housing services including education and outreach.

48. On or about February 2010, Jacqueline Luke contacted FHAA's Executive Director, Vincent B. Curry, to seek assistance regarding the denial of her reasonable accommodation request. Mr. Curry subsequently investigated the matter. FHAA diverted resources from its education and outreach work to investigate the allegations described herein.

## HUD ADMINISTRATIVE PROCESS

49. On or about February 19, 2010, Jacqueline Luke and FHAA filed complaints with the Ohio Civil Rights Commission alleging that Brian Hellwig and Amy Quillin unlawfully discriminated against Jacqueline Luke on the basis of disability. The complaints were accepted as dual-filed with the Department of Housing and Urban Development ("HUD") on the same day.

50. On or about November 4, 2010, the Ohio Civil Rights Commission waived the complaints to HUD under 24 C.F.R. § 103.110(a) for processing by HUD under the Fair Housing Act.

51. On or about July 10, 2013, Jacqueline Luke and FHAA amended their complaints to add Kent State University, Elizabeth Joseph, and Jill Church as respondents, and to add Brandon Luke as a complainant. These respondents, in addition to respondents Hellwig and Quillin, received actual notice of the amended complaints.

52. Pursuant to the requirements of 42 U.S.C. §§ 3610(a) and (b), the Secretary of HUD ("the Secretary") conducted and completed an investigation of the complaints filed by the Lukes and FHAA, attempted conciliation without success, and prepared a final investigative report. Based on information gathered during the investigation, the Secretary, pursuant to 42 U.S.C. § 3610(g)(1), determined that reasonable cause exists to believe that discriminatory housing practices had occurred.

53. On or about August 1, 2014, the Secretary issued a Determination of Reasonable Cause and Charge of Discrimination pursuant to 42 U.S.C. § 3610(g)(2)(A), charging Kent State University, Jill Church, Elizabeth Joseph, Brian Hellwig, and Amy Quillin with engaging in discriminatory housing practices in violation of the Fair Housing Act.

54. On or about August 9, 2014, complainants Jacqueline Luke, Brandon Luke, and FHAA elected to have the Charge of Discrimination resolved in a civil action filed in federal district court pursuant to 42 U.S.C. § 3612(a).

55. Following the Notice of Election, the Secretary authorized the Attorney General to commence this civil action pursuant to 42 U.S.C. § 3612(o).

## COUNT I

56. Plaintiff realleges and incorporates by reference herein the allegations described in paragraphs 1–55, above.

57. By the conduct described in the foregoing paragraphs, the Defendants have:

   a. Discriminated in the rental of, or otherwise made unavailable or denied, a dwelling because of disability in violation of 42 U.S.C. § 3604(f)(1);

   b. Discriminated in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of disability in violation of 42 U.S.C. § 3604(f)(2);

   c. Discriminated in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of disability by refusing to make reasonable accommodations in the rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. §§ 3604(f)(2), 3604(f)(3)(B); and

   d. Made, printed, published, or caused to be made, printed, or published, statements with respect to the rental of a dwelling that indicates a preference,

limitation, or discrimination based on disability in violation of 42 U.S.C. § 3604(c).

58. Jacqueline Luke is an "aggrieved person," as defined in 42 U.S.C. § 3602(i), and has suffered damages as a result of the Defendants' conduct described above.

59. Brandon Luke is an "aggrieved person," as defined in 42 U.S.C. § 3602(i), and has suffered damages as a result of the Defendants' conduct described above.

60. FHAA is an "aggrieved person," as defined in 42 U.S.C. § 3602(i), and has suffered damages as a result of the Defendants' conduct described above.

61. The Defendants' discriminatory actions and practices described above were intentional, willful, and taken in disregard for the rights of others.

## COUNT II

62. Plaintiff re-alleges and incorporates by reference herein the allegations described in paragraphs 1–61, above.

63. The Defendants' conduct described in the foregoing paragraphs constitutes:

   a. A pattern or practice of resistance to the full enjoyment of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601–3619, in violation of 42 U.S.C. § 3614(a); or

   b. A denial to a group of persons of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601–3619, which raises an issue of general public importance, in violation of 42 U.S.C. § 3614(a).

64. In addition to Jacqueline Luke, Brandon Luke, and FHAA, other persons may have been injured by the Defendants' discriminatory housing practices. Such persons are also

"aggrieved persons" as defined in 42 U.S.C. § 3602(i) and may have suffered injuries and damages as a result of the Defendants' actions and practices.

65. The Defendants' discriminatory actions and practices described above were intentional, willful, and taken in disregard for the rights of others.

**PRAYER FOR RELIEF**

WHEREFORE, the United States of America prays that the Court enter an ORDER that:

1. Declares that the Defendants' actions, policies, and practices, as alleged herein, violate the Fair Housing Act;

2. Declares that the Defendants have engaged in a pattern or practice of discrimination in violation of the Fair Housing Act or have denied rights under the Fair Housing Act to a group of persons raising an issue of general public importance;

3. Enjoins the Defendants, their officers, employees, agents, successors and all other persons in active concert or participation with any of them, from:

    a. Discriminating in the rental, or otherwise making unavailable or denying dwellings to renters, because of disability in violation of 42 U.S.C.§ 3604(f)(1);

    b. Discriminating against any person in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of disability in violation of 42 U.S.C. §§ 3604(f)(2) or 3604(f)(3)(B);

    c. Stating any preference, limitation, or discrimination based on disabilitiy in violation of 42 U.S.C. § 3604(c);

   d. Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, all persons aggrieved by the Defendants' unlawful practices to the position they would have been in but for the discriminatory conduct;

   e. Failing or refusing to take such affirmative steps as may be necessary to prevent recurrence of any discriminatory conduct in the future, and to eliminate, to the extent practicable, the effects of the Defendants' unlawful practices;

4. Awards monetary damages pursuant to 42 U.S.C. §§ 3612(o)(3), 3613(c)(1), and 3614(d)(1)(B) to Jacqueline Luke, Brandon Luke, FHAA, and any other person harmed by the Defendants' discriminatory conduct and practices;

5. Assesses a civil penalty against the Defendants, pursuant to 42 U.S.C. § 3614(d)(1)(C), to vindicate the public interest; and

6. Awards such additional relief as the interests of justice may require.

Respectfully submitted this 8th day of September, 2014.

|  |  |
|---|---|
| STEVEN M. DETTELBACH | ERIC H. HOLDER, JR.<br>Attorney General<br><br>MOLLY J. MORAN<br>United States Attorney<br>Acting Assistant Attorney General<br>Civil Rights Division<br><br>STEVEN H. ROSENBAUM<br>Chief |
| /s/ Michelle L. Heyer<br>MICHELLE L. HEYER (#0065723)<br>Assistant U.S. Attorney<br>United States Attorney's Office<br>801 West Superior Avenue<br>Cleveland, Ohio 44113<br>Ph: (212) 622-3600<br>Michelle.Heyer@usdoj.gov | /s/ Colleen M. Melody<br>TIMOTHY J. MORAN<br>Deputy Chief<br>COLLEEN M. MELODY<br>SAMUEL G. HALL<br>Trial Attorneys<br>U.S. Department of Justice<br>Civil Rights Division<br>950 Pennsylvania Avenue NW<br>Washington, DC  20530<br>Ph: (202) 305-0616<br>Colleen.Melody@usdoj.gov<br>Samuel.Hall2@usdoj.gov |