UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:14CV1992 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| | ) | |
| | ) | |
| KENT STATE UNIVERSITY, et al., | ) | |
| | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pending before the Court is a motion to approve the parties' proposed Consent Decree in this matter. The motion is GRANTED.

The Government brought the instant action against Kent State University asserting that Kent State was in violation of the Fair Housing Act. More specifically, the Government alleged that Kent State's failure to have any policy in place that would allow for the University to consider emotional support animals stood in violation of the Fair Housing Act. Prior to the completion of discovery in the matter, the parties resolved their differences and proposed that the Court approve their consent decree. The Court herein approves the decree, but adds the caveat that the decree should not be seen as a model for future litigation as it still maintains areas that are subject to significant improvement.

To its credit, the decree strives toward a laudable goal – formulating a policy that allows Kent State to evaluate whether a student should be permitted to own an emotional support animal while living on University property. In so doing, the decree provides for Kent State to adopt a Policy on Reasonable Accommodations and Assistance Animals in University Housing. The

decree further provides that employees involved in the decision-making process shall attend training within 90 days of the entry of the decree to assist in implementing this new policy.

It is the implementation of this policy and its provisions where the Court believes the parties should continue to strive for improvement while the consent decree remains in place. For example, the current policy provides that the University may require a statement from a "reliable third-party" with respect to any claimed disability. The policy, however, declines to limit this "reliable third-party" to mental health professionals or physicians. Instead, the policy notes: "A reliable third-party includes, but is not limited to someone who provides medical care, therapy or counseling to persons with disabilities, including, but not limited to, doctors, physician assistants, psychiatrists, psychologists, or social workers." By allowing this third-party to come from effectively any background, the parties may very well have set the stage for significant future litigation over the necessary credentials needed to demonstrate a disability. While the decree may in that manner provide the University with discretion, all parties would be better served to communicate with both mental health experts and emotional assistance animal experts to fine tune the list of "qualified third-parties" to ensure that only those that will genuinely benefit from the use of an animal are approved.[1]

In addition to fine-tuning the process, the parties are reminded that the policy affects not only its students, those with and without animals, but also the animals themselves. There is little doubt the University dorms were not built with the prospect of housing animals within them. Similarly, there is little doubt that existing Residence Services employees have no formal training with respect to animal welfare checks. As such, the Government and University would be well

---

[1] Similarly, the current policy places no formal limitation on the type or species of animal that may be approved as an emotional support animal.  Once again, while this provides flexibility, it will also no doubt encourage litigation by those who are unsuccessful in applying for an emotional support animal.  The parties would greatly benefit from consulting experts in the hope of limiting the type of animals that could legitimately qualify as emotional support animals.

advised to begin reviewing the logistics of ensuring that the animals are well cared for on University property.

The consent decree takes the first step in this process by requiring the student to ensure that the animal is well cared for while on University property. The University also reserves the right to remove the animal or discipline the student for mistreatment, abuse, or neglect of the animal. However, the decree does little to explain to either the student or the University employees precisely how any of these requirements will be enforced. For example, may a Resident Assistant perform a welfare check under the same standard utilized by a County Dog Warden? The parties would again perhaps benefit from direct discussions with those charged by law to ensure that animals are treated properly under the law. Training that includes direct discussions regarding Ohio or local law may dramatically benefit both the University employees and the animals at issue.

In this regard, the University may also benefit from an open dialogue with officials like the Dog Warden. It is likely that officials such as the Dog Warden have had limited or no interaction with the University in the past due to the nature of dormitory life. If this role is to increase as the use of emotional support animals increases, the University would benefit greatly from consistent interactions with this policing authority. For that matter, campus security could receive formal training regarding animal welfare.[2] Such a requirement in future decrees would put to rest many of this Court's concerns regarding whether the animals' rights have been sufficiently addressed within the Decree.

Finally, the University may also benefit from reviewing class schedules with those students that receive assistance animals. The current proposed policy notes that a student may not leave an animal for an unreasonably long period of time. The policy does not further define

---

[2] Understanding how to check on the welfare of an animal becomes all the more important when one takes note of the fact that the heat index for Kent, Ohio reached triple digits in the past month and the University still maintains numerous dormitories that lack air conditioning.

"unreasonable" and in so doing leaves the matter to the discretion of the enforcing party.   There is little doubt that this will raise questions such as, "How long of a break between classes necessitates a student returning to a dorm to allow the animal to go outside?"   In examining such an issue, the University may also have to examine whether it offers sufficient class schedules to allow a student the breaks necessary to ensure that an animal is not neglected on a routine basis.

With the serious reservations regarding the University's policy as set forth above, the Court nonetheless finds that the proposed Consent Decree meets the minimum legal standard required for entry by this Court.   At the same time, the Court is hopeful that the parties will review the concerns expressed herein and continue to strive to improve the Decree to ensure that both the students and the animals receive all the rights and protections available under the law.

IT IS SO ORDERED.


September 20, 2016                                  /s/ John R. Adams
                                                    JUDGE JOHN R. ADAMS
                                                    UNITED STATES DISTRICT JUDGE